## L. A. SMITHDEAL v. W. D. McADOO.

(Filed 19 December, 1916.)

**1. Contracts, Breach—Leases—Landlord and Tenant—Improvements—Damages.**

> Where a party negotiating for the lease of a store is let into possession and makes changes therein for the business he contemplates conducting, and thereafter voluntarily vacates the premises and sues the lessor for damages for an alleged breach of contract in failing to execute a written · contract in accordance with the agreement theretofore entered into by parol: *Held*, the repairs having been made by the plaintiff, having no estate or interest in the premises, he can only recover the amount the defendant's estate was enhanced in value by reason of his improvements and expenditures, though made upon a reasonable expectation that the written lease would be executed.

**2. Same—Negotiations—Abandonment—Statute of Frauds.**

> Where a storehouse has been leased for three years by parol, upon an agreement that a written lease would be accordingly executed, and the lessee has been let into possession and made repairs, and pending a dispute as to the terms of the payment of rent, leases another store, without the lessor's knowledge and when he was prepared to accede to the lessee's demand, and to execute the written lease accordingly: *Held*, the parol contract was enforcible by the lessee, not required to be in writing by the statute, Revisal, sec. 976, and being in possession of the leased premises, without thought of molestation by the lessor, his voluntary relinquishment of his rights ·will prevent his recovery for expenditures he has placed on the property, and other damages he alleges he has sustained in his action for breach of contract.

CIVIL ACTION tried before *Ferguson, J.,* and a jury, at August Term, 1916, of GUILFORD.

The action was to recover damages for alleged breach of contract to execute a written lease for a storeroom in Greensboro, N. C., belonging to defendant and others, his mother and sister, coöwners; the damages alleged being cost of improvements put upon property by plaintiff ................................................$124.77
and damages by reason of injury to plaintiff's stock of goods and delay, etc., attributable, as plaintiff claimed, to defendant's default ........................................................ 264.00

Total damages claimed ...........................$388.77

There was denial of liability on part of defendant, with evidence tending to support the position.

On the trial plaintiff tendered two issues, as follows:

1. What amount, if any, is plaintiff entitled to recover of defendant

on account of the shelving and other improvements made by the plaintiff in the defendant's storeroom?

2. What damages, if any, has plaintiff sustained by reason of injuries to his goods and loss of work and time, as alleged in the complaint?

The court declined to submit the second issue, and plaintiff excepted.

On the first issue there was verdict for defendant. Judgment on the verdict, and plaintiff excepted and appealed, assigning for error chiefly the refusal to submit the second issue and the ruling of the court that plaintiff, in any aspect of the evidence, could not recover for the cost of improvements, but only to the extent that the value of defendant's property was enhanced by reason of the same.

*N. L. Eure and R. C. Strudwick for plaintiff.*
*Brooks, Sapp & Williams for defendant.*

HOKE, J. There was evidence on the part of plaintiff tending to show that, on or about 13 August, 1915, defendant agreed to lease to plaintiff a storeroom in Greensboro, N. C., the lease to commence on 1 September, following, and to continue to 1 January, 1916, at $30 per month, and thereafter for two years at $35 per month; that a written lease, embodying their terms, was to be executed and delivered by defendant on or before 1 September, 1915; that on or soon after making the agreement the keys were delivered to plaintiff, who entered into possession and had shelving and repairs put into the store in order to render same suitable for plaintiff's business, dealer in books and musical instruments, at a cost for material and labor of the sum of $124.44. That defendant wrongfully failed to have said lease prepared, pursuant to agreement. but, on 1 September, tendered a written lease, containing a stipulation for payment of the monthly rent in advance; that on objection made, plaintiff and defendant entered into negotiations about this feature of the lease, and, on Thursday, 2 September, defendant having failed to tender plaintiff a lease properly drawn or to notify plaintiff that he would do so, on Friday morning, 3 September, plaintiff rented a storeroom from another party and surrendered possession of this one to defendant; that on Thursday, 2 September, the day before he rented the other store, plaintiff had called at defendant's office several times to inquire about the lease, and failed to see defendant or to get any word from him about it. There were facts in evidence tending to show that no definite agreement for a lease had ever been made between the parties, but that the matter was only in negotiation between them unless and until the written lease was executed, and the evidence on the part of defendant tended to show that, on objection made to payment of rent in advance, defendant

told plaintiff that was the usual way his leases were drawn, and to alter it would require that he consult with his coöwners, and he was also to confer with Mr. King on the subject; that plaintiff and defendant were negotiating about the change and were to see each other again about it; that, Thursday morning, the 2d of September, plaintiff passed defendant when the latter was having a business talk with a third person, and neither spoke, defendant supposing that plaintiff was going to defendant's office and would wait for him there; that soon thereafter defendant went to his office and failed to find plaintiff and did not see him again till Friday morning, when defendant told plaintiff it was all right, he would come to his terms; that defendant was ready to tell him the same thing the day before, on Thursday, and thought and had every reason to think that he would delay at the office; that they had agreed to speak about it again, and defendant supposed, of course, he would wait a moment to see him, and that he did not see him till Friday, 3 September, when defendant told plaintiff he would come to his terms about it, and plaintiff replied it was too late, he had rented another place and given up keys, etc. The evidence of defendant tended further to show that the improvements put upon the property by plaintiff did not in any way enhance its value or make it more desirable as a business stand, etc., and, on the contrary, it would cost as much as $75 to restore it to its former condition, etc.

On this, the testimony chiefly relevant to the issue, we are of opinion that there was no error in the way the case was submitted to the jury, and assuredly none that gives plaintiff any just ground of complaint. The weight of the evidence tends strongly to show that there was no definite contract of rental between these parties nor any definite agreemnt to make such a contract. There is much in plaintiff's own testimony and in his conduct in reference to it that supports this position, and, in such case, the repairs were made by plaintiff in a storeroom in which he had no estate or interest, and, even if they were made on a fair and reasonable expectation that such a contract would be awarded him, he could only recover the amount the defendant's estate was enhanced in value by reason of his improvements and expenditures. In that aspect the case is not dissimilar to one where a vendee of land, under an oral contract of purchase, is let into possession and makes improvements on the faith of the agreement which the vendor repudiates. Under our decisions he can recover to the extent that the land is enhanced in value by reason of his outlay and expenditure. *Jones v. Sandlin,* 160 N. C., 150; *Ford v. Stroud,* 150 N. C., 362; *Alston v. Connell,* 145 N. C., 1; *Vaughn v. Craven,* 38 Tenn., 163; Keener on Quasi Contracts, pp. 363-364. Under this position the cause has been submitted and decided by the jury against any recovery by

plaintiff. And assuming, as plaintiff now insists, that there was a definite agreement for a lease, containing all the essentials of a binding contract between them, i. e., definite as to the parties, the property, the length of time when it was to begin, and the amount of the rent, 1 McAdam Landlord and Tenant (3 Ed.), pp. 170-171, and that, in the absence of a stipulation or custom to the contrary, the rent was payable at the end of a term or given period for payment of the rent, this being the recognized position on the subject. *Tignor v. Bradley,* 32 Ark., 781; *Campbell v. Hatchett,* 55 Ala., 548; *Menough's Appeal,* 61 Pa., 432; *Raymond v. Thomas,* 24 Ind., 476; Taylor on Landlord and Tenant (9 Ed.), sec. 391. In that event there can be no recovery by plaintiff for the reason that, being in possession under such a contract, with no one having the power or disposition to molest him, he voluntarily and without adequate cause or excuse abandoned his rights thereunder, surrendered the possession, and rented a storeroom from another. The alleged lease or contract to make one, not being in excess of three years, was not required by the law to be in writing, Revisal, sec. 976, and, on the facts in evidence, the failure of defendant to execute the writing just when plaintiff called on him to do so, even if wrongful, was not vital to the existence of the contract nor required for the protection of plaintiff's rights, and did not, therefore, justify his attempt to sever the contract relation between them. *Weintz v. Hafner,* 78 Ill., 27; *Farham v. Davis,* 32 N. H., pp. 302-312; *Gillett v. Maynard,* 5 Johns, 85; Anson on Contracts, p. 377.

In *Weintz's case* it is held, among other things: "A slight or partial neglect, on the part of one of the contracting parties, to observe some of the terms or conditions of the contract will not justify the other party at once to abandon or rescind the same. In order to justify an abandonment of a contract, and the proper remedy growing out of it, the failure of the opposite party must be a total one. The object of the contract must have been defeated or rendered unattainable by his misconduct or default."

As heretofore stated, and according to all the testimony, plaintiff was in the possession and enjoyment of his term, with a definite contract adequate to his protection, and defendant not only had no right to molest him, but had yielded his position on the question and intended to execute the lease as plaintiff desired. In this aspect of the case, therefore, plaintiff must be taken to have voluntarily relinquished his rights under the alleged agreement, and no recovery should be allowed him.

In *Farham's case, supra,* where plaintiff had refused to take over property which he had improved under a contract, the position is stated as follows: "The next question for consideration is whether,

upon the facts proved, the action can be maintained. The repairs which are the subject of the suit under one of the counts were not made for the defendants, nor upon their account, nor for their benefit. There is no pretense of an express promise to pay for them, and we can perceive no ground upon which the law will imply such promise. They were made by the plaintiff, under the expectation, founded on the agreement of the defendants, acting in behalf of the town, for the sale of the house, that they would inure to his benefit as the future owner of the house; and if he has not derived from them the benefit expected, it is not because of the want of authority in the defendants to make the agreement in behalf of the town, but because, having 'changed his plans,' he preferred to relinquish all the advantage which a fulfillment of the agreement would have secured, and, therefore, refused on his part to fulfill it."

There is no error in the proceedings to plaintiff's prejudice, and judgment is affirmed.

No error.